UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| SCHLEICHER & STEBBINS HOTELS, LLC,<br><br>    Plaintiff<br><br>v.<br><br>EVANSTON INSURANCE COMPANY, HALLMARK SPECIALTY INSURANCE COMPANY, SCOTTSDALE INSURANCE COMPANY, CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO POLICY NO. B128416120W18, and GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA,<br><br>    Defendants. | C.A. No.: 1:23-cv-351-PB-TSM |

## FIRST AMENDED COMPLAINT

Pursuant to R.S.A. § 491:22, plaintiff Schleicher & Stebbins Hotels LLC ("S&S") brings this First Amended Complaint.

PRELIMINARY STATEMENT

S&S brings this declaratory judgment action against its first-party property insurers. S&S's affiliate, Lawrenceville, LLC ("Lawrenceville"), owns a hotel in Chelsea, Massachusetts, covered by the insurers named as defendants in this action (the "Hotel"). Over time, the Hotel has undergone significant differential settlement, sinking as much as six inches in places. This excessive settlement was caused by a defectively designed and constructed Ground Improvement System, a system underneath the foundation at the Hotel, meant to strengthen the soil adequately to hold the load of the Hotel.

Because of the failure of the Ground Improvement System, there has been significant damage at the Hotel. For example, the sewer pipes under the Hotel have broken, the floors have been warped, many walls have cracked, and the windows and doors are no longer aligned. To fix this damage has required a herculean effort, including replacing the Ground Improvement System with "micropiles" under the Hotel's foundation, so that the settlement will stop. To do this work, the Hotel has been closed since May 2023, and S&S estimates at this time that its losses in connection with the repair of the Hotel will be in excess of $38 million.

While the policies at issue in this case exclude the costs to "making good" defective design or construction, they do cover "loss or damage resulting from such defective" design or construction. The defendants in this case, however, have refused to agree to cover all of the expenses to repair "resulting damage," or the attendant business interruption expenses (lost profits and similar claims) covered under their policies. S&S brings this action to compel these defendants to cover its losses at the Hotel, as required by their policies.

## PARTIES

1.    Plaintiff Schleicher & Stebbins Hotels LLC ("S&S") is a limited liability company organized and existing under the laws of the State of New Hampshire, with a principal place of business at 1359 Hookset Road, Hookset, New Hampshire.

2.    Defendant Evanston Insurance Company ("Evanston") is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business at 175 West Higgins Road, Suite 750, Rosemont, Illinois. Evanston issued Policy No. MKLV11XP006985 to S&S for the 2018-2019 Policy Year. Evanston Policy No. MKLV11XP006985 has a $20 million per-occurrence limit, in excess of the $10 million per-occurrence primary limit, which is 50% of the $40 million excess layer of S&S's 2018-2019 Property Insurance.

3.	Defendant Hallmark Specialty Insurance Company ("Hallmark") is a corporation organized and existing under the laws of the State of Oklahoma, with a principal place of business at 7550 IH-10 West, 14th Floor, San Antonio, Texas. Hallmark issued Policy No. 73PRX189E70 to S&S for the 2018-2019 Policy Year. Hallmark Policy No. 73PRX189E70 has a $15 million per-occurrence limit, in excess of the $10 million per-occurrence primary limit, which is 37.5% of the $40 million excess layer of S&S's 2018-2019 Property Insurance.

4.	Defendant Certain Underwriters at Lloyd's of London subscribing to Policy UMR #B128416120W18, is an insurance underwriter based at 1 Lime Street, London, England. ("Lloyd's 0W18").[1] Lloyd's 0W18 issued Policy No. 34158-000041-1801 to S&S for the 2018-2019 Policy Year, taking on 70% of the risk of that policy. Lloyd's 0W18 Policy No. 34158-000041-1801 insures 70% of a $5 million per-occurrence limit, in excess of the $10 million per-occurrence primary limit, which is 8.75% of the $40 million excess layer of S&S's 2018-2019 Property Insurance.

5.	Defendant General Security Indemnity Company of Arizona ("GSICA") is a corporation organized and existing under the laws of the State of Arizona, with a principal place of business at 28 Liberty Plaza, Suite 5400, New York, New York. GSICA issued Policy No. 34158-000041-1801 to S&S for the 2018-2019 Policy Year, taking on 30% of the risk of that policy. GSICA Policy No. 34158-000041-1801 insures 30% of a $5 million per-occurrence limit, in excess of the $10 million per-occurrence primary limit, which is 3.75% of the $40 million excess layer of S&S's 2018-2019 Property Insurance.

---

[1] The subscribers to this Policy appear to be as follows: Ascot Syndicate No. 1414 (35%); Kiln Syndicate No. 1414 (22.5%); CNA Hardy Syndicate No. 382 (12.5%).

6.      Defendant Scottsdale Insurance Company ("Scottsdale") is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business at 8877 North Gainey Center Drive, Scottsdale, Arizona. Scottsdale issued Policy No. AJS0000808 to S&S for the 2018-2019 Policy Year. Scottsdale Policy No. AJS0000808 has a $50 million per-occurrence limit, in excess of the total $50 million per-occurrence primary layer limit and secondary excess layer limit.

7.      The schematic for S&S's property insurance for the 2018-2019 Policy Year looks like the following:

| Carrier | Policy No. | Per Occurrence Limit | Layer |
|---|---|---|---|
| Starr[2] | SPSTPTY11112218 | $5 million | Primary |
| Lloyd's 0518[3] | B1263EW0040518 | $5 million | Primary |
| Evanston | MKLV11XP006985 | $20 Million | Excess of $10 million (second layer) |
| Hallmark | 73PRX189E70 | $15 million | Excess of $10 million (second layer) |
| Lloyd's 0W18 | 34158-000041-1801 | 70% of $5 million | Excess of $10 million (second layer) |
| GSICA | 34158-000041-1801 | 30% of $5 million | Excess of $10 million (second layer) |
| Scottsdale | AJS0000808 | $50 million | Excess of $50 million (third layer) |

---

[2] Starr Surplus Lines Insurance Company ("Starr") is a corporation organized and existing under the laws of the State of Texas, with a principal place of business at 399 Park Avenue, 8th Floor, New York, New York. Starr issued Policy No. SPSTPTY11112218 to S&S for the Policy Year November 1, 2018, through November 1, 2019 (the "2018-2019 Policy Year"). Starr has been dismissed from this Action. Starr's Policy No. SPSTPTY11112218 has a limit of liability of $5 million per occurrence, which is 50% of the $10 million per-occurrence limit of the primary layer of S&S's 2018-2019 Property Insurance.

[3] Certain Underwriters at Lloyd's of London Subscribing to Policy No. B1263EW0040518 ("Lloyd's 0518") is an insurance underwriter based at 1 Lime Street, London, England. Lloyd's 0518 issued Policy No. B1263EW0040518 to S&S for the 2018-2019 Policy Year. Lloyd's 0518 has been dismissed from this Action. Lloyd's 0518 Policy No. B1263EW0040518 has a limit of liability of $5 million per occurrence, which is 50% of the $10 million per-occurrence limit of the primary layer of S&S's 2018-2019 Property Insurance.

4

## JURISDICTION

8. Jurisdiction is proper in this Court under 28 U.S.C. § 1332.[4] This action was previously removed to this Court under 28 U.S.C. § 1441.

9. Venue is proper under U.S.C. § 1391 in this District, which is the location of S&S's principal place of business.

## THE INSURANCE POLICIES

10. On November 1, 2018, Evanston, Hallmark, Lloyd's 0W18, GSICA, and Scottsdale (the "2018-2019 Carriers")[5] issued first-party property policies to S&S, as the named Insured, for the 2018-2019 Policy Year (the "2018-2019 Policies").[6]

11. Under the 2018-2019 Policies, each of the 2018-2019 Carriers is liable for its proportional share of each occurrence, as set forth above.

12. The term "occurrence" is defined in the 2018-2019 Policies to mean, among other things, "'loss occurrence' [which] shall mean an accident or occurrence or series of accidents or occurrences arising out of one event."

13. The 2018-2019 Policies cover "the interest of the Insured in all real and personal property owned, used, leased or intended for use by the Insured[.]"

14. The 2018-2019 Policies attached and covered the insured property from 12:01 A.M. on November 1, 2018, until 12:01 a.m. on November 1, 2019.

---

[4] Diversity Statements have been filed by all Defendants and can be identified on the docket as filed by Evanston Insurance Company filed on July 31, 2023, Dkt. No. 27; Hallmark Specialty Insurance Company filed on Aug. 22, 2023, Dkt. No. 42; Certain Underwriters at Lloyds of London subscribing to Policy No. B128416120W18 on Sept. 11, 2023, Dkt. No. 59; General Indemnity Insurance Co. of Arizona filed on Sept. 7, 2023, Dkt. No. 55; and Scottsdale Insurance Co., filed on Aug. 24, 2023, Dkt. No. 46.

[5] As noted above, Starr and Lloyd's 0518 also issued first-party property policies to S&S for this period. Their limits have been paid, and they have been dismissed from this Action.

[6] S&S's original complaint listed another carrier, Landmark American Insurance Company ("Landmark"), as a defendant that issued a policy for the 2018-2019 Policy Year. S&S dismissed Landmark, which is an excess carrier above the $100 million level, without prejudice, on August 24, 2023. Dkt. 49.

THE PROPERTY: THE CHELSEA HOMEWOOD SUITES HOTEL

15. The Chelsea Homewood Suites Hotel, located at 145 Beech Street, Chelsea, Massachusetts (as defined above, the "Hotel"), is owned by Lawrenceville, a special-purpose entity affiliate of S&S.

16. As such, the Hotel is a covered property under the 2018-2019 Policies.

17. Construction of the Ground Improvement System, which underlies the Hotel's foundation, began approximately in 2014. The Ground Improvement System consists of Grouted Aggregate Piers ("GAPs") and Rammed Aggregate Piers ("RAPs"), which were drilled into the soil before the foundation was built at the Hotel.

18. The Ground Improvement System underlies the footings under the Hotel, which underly the slab on which the Hotel is constructed.

19. Construction of the Hotel was completed in approximately March 2017.

20. In 2018, a representative from the general contractor responsible for the construction of the Hotel, ProCon, LLC ("ProCon"), observed that the drain surrounding the indoor pool at the Hotel and the ceramic tile at the pool deck were no longer flush.

21. In the two years that followed, there was additional damage noticed at the Hotel, most notably at the pool, but also including cracks in the drywall, doors out of alignment, and bowing in a first-floor wall.

22. In April 2020, S&S was provided with information from ProCon that there was a survey done at the indoor pool to measure potential settlement, and that there was limited settlement in the pool area.

23. In August 2020, ProCon, on behalf of S&S, conducted a LiDar scan of the entire Hotel, which is a laser designed to detect settlement. The results of the LiDar scan showed

significant settlement at the Property. Moreover, the LiDar scan showed significant differential settlement, meaning that the settlement was not even throughout the building. The magnitude of settlement was much greater in the interior of the Hotel than around the perimeter.

24. The defective design and installation of the Ground Improvement System were the cause of this excessive differential settlement.

25. In October 2020, Lawrenceville, the owner of the Hotel, brought a lawsuit in Massachusetts Superior Court against ProCon and other defendants responsible for the design and construction of the Ground Improvement System.

### THE DAMAGE AND REMEDIATION AT THE HOTEL

26. The Hotel continued to settle after the filing of the lawsuit against ProCon.

27. On or about May 1, 2023, the Hotel closed its doors to guests so that a remediation effort could begin. At the time the Hotel closed, the interior of the Hotel had sunk more than six inches into the ground. The defectively designed and installed Ground Improvement System had caused extensive physical property damage throughout the Hotel, including but not limited to the breaking of the sewer lines underground; distorted floors, walls, doors and windows; cracking throughout the walls of the Hotel; and many other significant issues.

28. The remediation is an enormous undertaking. It is estimated that the work will not be completed until the fall of 2024. The first floor of the Hotel was demolished, and new micropiles are being installed to support the Hotel. The sewer lines will need to be repaired, the columns and floors of the Hotel will need to be jacked up, and then the slab and first floor will need to be rebuilt. The guest rooms and hallways on floors 2-5 will need to be repaired, including the walls, doors, bathrooms, and windows.

29. S&S estimates that the remediation effort will cost in excess of $29 million, including construction costs, construction materials, architectural design costs, builder's risk and property insurance, and a small contingency for those costs ("Remediation Expenses"). As of January 31, 2024, S&S has already incurred approximately $12,258,115.67 in Remediation Expenses.

30. Moreover, S&S estimates that it will lose in excess of $8 million because of the interruption of its business, including ongoing expenses that cannot be avoided even when the Hotel is closed, lost profits, re-opening expenses, and post-reopening losses ("Business Interruption Expenses"). As of January 31, 2024, S&S has already incurred approximately $3,150,000.00 in Business Interruption Expenses.

31. These estimates have been provided to the Defendants.

THE INSURANCE COMPANIES' CONDUCT IN DEALING WITH S&S

32. S&S initially reported its loss on January 18, 2021, to certain carriers (the "2019-2020 Carriers") that had issued property insurance policies to S&S for Policy Year November 1, 2019, through November 1, 2020 (the "2019-2020 Policies").[7]

33. On or about February 5, 2021, the 2019-2020 Carriers sent a reservation of rights letter, through their designated adjuster, Jeffrey Hellman of McLaren Young International ("McLarens").

---

[7] The 2019-2020 Carriers, named as defendants in the original complaint in this action, were: Everest Indemnity Insurance Company, Certain Underwriters of Lloyd's subscribing to Policy No. EW0040519 ("Lloyd's 0519"), Axis Surplus Insurance Company, Mitsui Sumitomo Insurance Company of America ("Mitsui"), and Homeland Insurance Company of New York ("Homeland"). Certain 2018-2019 Carriers were also 2019-2020 Carriers (Starr, Evanston, Hallmark, and Scottsdale). Those 2019-2020 Carriers that are not also 2018-2019 Carriers have been dismissed. *See* Dkt. No. 49 (Landmark Dismissal); Dkt. No. 50 (Mitsui Sumitomo Dismissal); Dkt. No. 71 (Homeland Ins. Co. Dismissal); Dkt. No. 88 (Certain Underwriters at Lloyd's of London subscribing to Policy No. B126EW0040519 – "Lloyds 0519" Dismissal); Dkt. No. 89 (Axis Surplus Ins. Dismissal); Dkt. No. 90 (Everest Indemnity Ins. Co. Dismissal).

34. In the spring and fall of 2021, the 2019-2020 Carriers requested various pieces of information concerning the conditions at the Hotel, the settlement at the Hotel, and the damage at the Hotel, including an inspection of the Hotel.

35. S&S cooperated with the 2019-2020 Carriers and Hellman throughout this period and provided the requested information and access to the Hotel.

36. On May 2, 2022, the 2019-2020 Carriers, through Hellman, sent S&S a letter partially denying coverage but acknowledging that certain damage to the Hotel's "superstructure" caused by differential settlement "is not excluded from coverage."

37. In response to the May 2, 2022, letter, on September 30, 2022, S&S informed the 2019-2020 Carriers of the nature and extent of the continuing settlement, including LiDar scans, photographs, invoices, and provided an estimate, which at the time was for $24.2 million to repair the Hotel, and $7.23 million for business interruption, or time element, loss.

38. In addition, after receiving the above-mentioned May 2, 2022, letter from the 2019-2020 Carriers, noting that other policies might be available to cover the loss, S&S filed its Notices of Claim to the 2018-2019 Carriers, plus Starr and Lloyd's 0518, on August 25, 2022.

39. Both the 2018-2019 Carriers and the 2019-2020 Carriers designated the same individual, Jeff Hellman at McLarens, as the adjuster in their Policies.

40. On December 22, 2022, the 2018-2019 Carriers sent a letter reserving their rights and seeking additional information about when S&S first became aware of damage at the Hotel.

41. After many months of seeking coverage for the damage at the Hotel, on or about March 17, 2023, certain carriers (Starr, Lloyd's 0519, and Lloyd's 0518) advanced $850,000.00 to S&S with five conditions, including that S&S continue to cooperate, and expressly continuing to investigate under a complete reservation of rights.

9

42. On October 25, 2023, McLarens recommended an advance payment of $8,292,833.00 to S&S based on McLarens's current estimate of $5,302,833.00 for the "actual cash value" of the covered repairs and a $3 million advance on the total McLarens' estimate of business interruption losses.

43. Also in the fall of 2023, nearly three years after S&S reported the loss to the 2019-2020 Carriers, the 2018-2019 and 2019-2020 Carriers proposed that they would stipulate that the occurrence at issue took place during the 2018-2019 Policy Period.

44. To give effect to this agreement, on January 11, 2024, S&S, Lawrenceville, LLC, and certain of the 2018-2019 Carriers and 2019-2020 Carriers, executed an Agreement and Stipulation of Occurrence Date ("Stipulation").[8]

45. The parties to the Stipulation agreed that "the physical loss and damage because of differential settlement of the Hotel, which was caused by the defective design and installation of the 'Ground Improvement System' at the Hotel," were "deemed to have occurred during the effective dates of the 2018-2019 Policies." The parties also stipulated that S&S's claimed business interruption losses were "deemed to have occurred during the effective dates of the 2018-2019 Policies, even though [they were] incurred and will continue to be incurred after November 1, 2019."

*The Dispute Between S&S and the 2018-2019 Carriers*

46. There is a dispute concerning which damage and losses are covered under the 2018-2019 Policies.

---

[8] The parties to the Stipulation included all defendants in this action at the time of execution of the Stipulation. As noted above, Landmark was previously dismissed from this action and thus was not a party to the Stipulation. Mitsui and Homeland are also excess carriers in the 2019-2020 Policy Year and were voluntarily dismissed without prejudice. Dkt. nos. 50, 71. Mitsui and Homeland were thus not parties to the Stipulation.

10

47. The 2018-2019 Policies do not insure: "against the cost of making good defective design or specifications, faulty material, or faulty workmanship"; the 2018-2019 Policies further provide, "however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship." *See* Para. 29(b).

48. The 2018-2019 Policies do not insure "against inherent vice or latent defect unless other loss or damage from a peril insured against herein ensues and then this policy shall cover for ensuing loss or damage." *See* Para. 29(d).

49. The 2018-2019 Carriers have raised Para. 29(d) as a potential exclusion, although the differential settlement has been caused by a construction and design defect, not an "inherent vice or latent defect."

50. The 2018-2019 Policies also contain the following clause:

In case of actual or imminent loss or damage by a peril insured against, it shall, without prejudice to this insurance, be lawful and necessary for the Insured . . . to sue, labor, or travel for, in, and about the defense, the safeguard, and the recovery of the property or any part of the property insured hereunder; nor in the event of loss or damage, shall the acts of the Insured or of this Company in recovering, saving, and preserving the insured property be considered a waiver or an acceptance of abandonment. This Company shall contribute to the expenses so incurred according to the rate and quantity of the sum herein insured. *See* Para. 62 (Sue and Labor Clause).

51. There is an actual controversy between S&S and the 2018-2019 Carriers as to the meaning and applicability of the provisions set forth in the paragraphs, above.

52. There are disputes about which of the Remediation Expenses and Business Interruption Expenses are covered as either "resulting damage," from defective design and construction (Paragraph 29(b)); "ensuing loss" from an inherent vice (Paragraph 29(d)) (if applicable, as Defendants have asserted); or as work that S&S has undertaken "to "safeguard . . . the [insured] property (Paragraph 62)."

11

53. There is also a dispute about the costs S&S has and will incur to make reasonable and necessary repairs to the Hotel.

54. These disputes are evident to date, even if the exact scope is not fully determined, as the remediation is still ongoing.

55. As of October 26, 2023, McLarens recommended a total advance of $8,292.833.00. This appears to be based on its consultants estimate of the "actual cash value" of the loss of $5,302,833.00, and a "business interruption advance" of $3,000,000.

56. Since that time, Lloyd's 0158 and Starr have each paid S&S $5 million, exhausting their (the primary layer's) policy limits.

57. S&S's estimates of its losses are in excess of $38 million, and it is entitled to coverage well above the amount the 2018-2019 Carriers have committed to providing.

## COUNT ONE: DECLARATORY JUDGMENT
RSA § 491:22 and § 491:22(a) – (c)

58. Paragraphs 1 – 61 are incorporated as if set forth again herein.

59. An actual controversy exists between S&S, on the one hand, and the 2018-2019 Carriers, on the other.

60. S&S claims a present legal right to coverage under the 2018-2019 Policies and the 2018-2019 Carriers claim adversely to this right.

61. S&S claims that all "resulting damage" and associated costs from the defectively designed and constructed Ground Improvement System is a loss under the Policy and should be covered, as well as any related business interruption expense.

62. To the extent that the 2018-2019 Carriers claim there was an "inherent vice" in the soil at the Property, which S&S denies, S&S claims that all "ensuing loss or damage" from that inherent vice should be covered, as well as all related business interruption expense.

12

63. S&S further claims that all costs incurred to preserve the Hotel should be covered under the Sue and Labor clause, as the Hotel would have settled indefinitely if S&S had not undertaken remediation efforts.

64. The Carriers, to date, have not taken a position more definite than their December 22, 2022, reservation of rights letter and the previous reservation of rights letter from the 2019-2020 Carriers.

65. Starr and Lloyd's 0518 have paid S&S $10 million, exhausting their policy limits, but the 2018-2019 Carriers have not made any additional payments.

66. Ten million dollars is far short of the Remediation Expenses and Business Interruption Expenses S&S will incur.

WHEREFORE, S&S requests that this Court:

(1) Issue a declaration that all "loss or damage resulting" from the defectively designed Ground Improvement System, including covered Remediation Expenses and Business Interruption Expenses, is covered under the 2018-2019 Policies, including without limitation that all repairs to floors 1-5 of the Hotel, the demolition and restoration of the slab on grade, the jacking up of and repairs to the existing structure, and the repairs to underground plumbing, are all covered under the 2018-2019 Policies, in an amount to be determined at trial;

(2) To the extent that the Court finds there was an "inherent vice" in the soil at the Property, issue a declaration that all "ensuing loss or damage" from that inherent vice, including covered Remediation Expenses and Business Interruption Expenses, is covered under the 2018-2019 Policies, including without limitation that all repairs to floors 1-5 of the Hotel, the demolition and restoration of the slab on grade, the jacking up of and repairs to the existing

structure, and the repairs to underground plumbing, are all covered under the 2018-2019 Policies, in an amount to be determined at trial;

(3) In the alternative, issue a declaration that all Remediation Expenses and Business Interruption Expenses, in an amount to be determined at trial, should be covered under the Sue and Labor clause (para. 62), as the Hotel would have settled indefinitely if S&S had not undertaken remediation efforts.

(4) Enter judgment in favor of S&S and against the 2018-2019 Carriers and award S&S costs and expenses;

(5) Award S&S's attorneys' fees and costs as provided for in RSA § 491:22-b; and

(6) Grant such other relief as the Court may deem just and proper.

SCHLEICHER & STEBBINS HOTELS, LLC
By its attorneys

/s/ Joseph T. Toomey
Joseph Toomey (NHBA #274174)
jtoomey@nutter.com
Sarah P. Kelly (admitted pro hac vice)
skelly@nutter.com
Stephen J. Brake (admitted pro hac vice)
sbrake@nutter.com
Nutter, McClennen & Fish, LLP
Seaport West, 155 Seaport Blvd.
Boston, Massachusetts 02210
Telephone: (617) 439-2000
Facsimile: (617) 310-9000

March 26, 2024

## JURY DEMAND

S&S hereby demands a jury on all claims so triable.

CERTIFICATE OF SERVICE

     I hereby certify that on March 26, 2024, I caused a true and correct copy of this document to be served upon all counsel of record via CM/ECF.

                                      */s/ Joseph T. Toomey*
                                      Joseph T. Toomey

6576600